UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRAIG MILLER,

        Plaintiff,                CIVIL ACTION NO. 12-12639

    v.                               DISTRICT JUDGE JULIAN ABELE COOK

                                    MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 9, 12)**

Plaintiff Craig Miller challenges the Commissioner of Social Security's ("the Commissioner") final denial of his benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 9, 12). Judge Julian Abele Cook referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 2).

**I.    RECOMMENDATION**

Because substantial evidence supports the Administrative Law Judge's ("ALJ") decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

**II.    DISCUSSION**

    *A.    Framework for Disability Determinations*

Under the Social Security Act, (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin*

*v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that Plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

  **B.**  ***Standard of Review***

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses" (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th

Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party" (internal quotation marks omitted)). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

### III. REPORT

#### A. *Administrative Proceedings*

Plaintiff applied for supplemental security income and disability insurance benefits on April 28, 2008, alleging he became disabled on August 2, 2007 (Tr. 39). After the Commissioner initially denied Plaintiff's application, he appeared with counsel for a hearing before ALJ Andrew G. Sloss, who considered the case *de novo*. In a written decision, the ALJ found Plaintiff was not disabled (Tr. 39-53). Plaintiff requested an Appeals Council review (Tr. 29). On May 14, 2012, the ALJ's findings became the Commissioner's final administrative decision when the Appeals Council declined further review (Tr. 1-4).

#### B. *ALJ Findings*

Plaintiff was 42 years old on his disability onset date (Tr. 51). He has a GED and past relevant work as a laborer and press operator (Tr. 51, 60). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that he had not engaged in

4

substantial gainful activity since his disability onset date of August 2, 2007 (Tr. 41).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: bipolar disorder, osteoarthritis,[1] and degenerative disc disease (Tr. 41).[2]

At step three, the ALJ found that Plaintiff did not have impairments that met or medically equaled one of the listings in the regulations (Tr. 42).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> light work[3] . . . and can lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; stand or walk [six] hours in an [eight]-hour workday; and sit [six] hours in an [eight]-hour workday; additionally, [Plaintiff] is limited to work that involves simple, repetitive work involving routine tasks and only occasional supervision.

(Tr. 44).

At step four, the ALJ found that Plaintiff could not perform his past relevant work as a laborer or press operator (Tr. 51).

---

[1] "[Osteoarthritis] is associated with a breakdown of cartilage in joints and can occur in almost any joint in the body." *See* http://www.webmd.com/osteoarthritis/guide/osteoarthritis-basics (last visited July 3, 2013).

[2] "Degenerative disc disease is not really a disease but a term used to describe the normal changes of the discs in the spine as a person ages. The breakdown of the discs can result in back or neck pain, as well as osteoarthritis, herniated disc, or spinal stenosis." *See* http://www.webmd.com/hw-popup/degenerative-disc-disease (last visited July 3, 2013).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

At step five, the ALJ found Plaintiff was not disabled, because he could perform a significant number of jobs available in the national economy at the light, unskilled level,[4] such as dishwasher, laundry worker, and inspector (Tr. 52, 67).

### C.     Administrative Record

#### 1.     Plaintiff's Hearing Testimony and Statements

Plaintiff testified that he obtained his GED and maintained steady employment until 2007 (Tr. 60). Plaintiff helps his 84 year old mother with daily chores (e.g., cooking and cleaning), watches television, and visits a friend (Tr. 63-64).

According to Plaintiff, he was diagnosed with bipolar disorder and suffers from debilitating depression (Tr. 61). He reported becoming depressed after 2-3 months on a job (Tr. 61). Plaintiff's medication helps his depression, but it makes him tired; he has to take multiple 15-45 minute naps during the day (Tr. 61-62, 66). Plaintiff testified that he also has osteoarthritis in both ankles, plantar fasciitis in his heel,[5] three bad discs in his lower back, two bad discs in his neck, and a "rip" in his spinal cord (Tr. 62); he has problems with his memory, concentration, comprehension, following directions, and socializing with others (Tr. 65); and, his

---

[4]"Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a).

[5]"Plantar fasciitis is inflammation of the thick tissue on the bottom of the foot. This tissue is called the plantar fascia. It connects the heel bone to the toes and creates the arch of the foot." *See* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0004438/ (last visited July 9, 2013).

ankles swell and feel like "somebody's hitting [them] with a hammer on the sides" (Tr. 62). Plaintiff takes water pills to keep the swelling down, but sometimes his ankles swell up almost to the size of his calves (Tr. 62).

Plaintiff testified that he has difficulty bending at the waist, standing for more than 45 minutes, walking longer than 25 minutes, and sitting longer than an hour (Tr. 62-64). He also testified that – a few days before the hearing – he shoveled snow and suffered the typical pain he experiences after most physical activities (Tr. 63).

### 2. Relevant Medical Evidence

The medical evidence reflects Plaintiff's history of bipolar disorder, osteoarthritis, and degenerative disc disease in his lower lumbar spine.

Plaintiff saw Dr. Mark Zaroff, a licensed psychologist and state agency mental consultant, on June 19, 2008 with complaints of back and shoulder pain. He also reported that his mental disabilities prevented him from "functioning in the workplace" (Tr. 201). Plaintiff said that he exercised three days per week and smoked marijuana to help him sleep (Tr. 203). Dr. Zaroff diagnosed Plaintiff with Bipolar I Disorder moderate severity and cannabis abuse (Tr. 205).

On July 6, 2008, Dr. Joe DeLoach, a state mental health consultant, completed the Psychological Review Technique and Mental Residual Functional Capacity Assessment Forms. (Tr. 207-225). After reviewing Plaintiff's statements and his medical record, Dr. DeLoach found Plaintiff had the capacity to perform simple tasks on a sustained basis (Tr. 207). According to Dr. DeLoach, Plaintiff was mildly limited in his activities of daily living. He was moderately limited in his ability to: (1) maintain social functioning; (2) maintain concentration, persistence,

and pace; (3) understand and remember detailed instructions; (4) carry out detailed instructions; (5) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (6) sustain an ordinary routine without special supervision; (7) work in coordination with or proximity to others without being distracted; (8) complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods; (9) accept instructions and respond appropriately to criticism from supervisors; (10) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (11) respond appropriately to changes in the work setting; and, (12) set realistic goals or make plans independently of others (Tr. 218, 222-223). Dr. DeLoach summarized his findings as follows:

> [Plaintiff's] [u]nderstanding and memory are mildly to moderately impaired. Sustained concentration and persistence are moderately impaired. Social Interaction and Adaptation are mildly to moderately reduced. ADL Forms show that [Plaintiff] is able to handle most ADL's within physical limitations. [Plaintiff] is capable of simple one and two step tasks. [Plaintiff's] psychological limitations do not appear to interfere with the potential for work activities that are simple in nature. [Plaintiff] may function more effectively in small familial groups or working alone. [Plaintiff] retains the capacity to perform simple tasks on a sustained basis.

(Tr. 224). He also concluded that Plaintiff was impaired by his cannabis abuse (Tr. 216).

On October 20, 2008, Cheryl Lacy, N.P., conducted an initial psychiatric evaluation. Plaintiff reported feelings of depression, negative thoughts, and auditory hallucinations. Plaintiff's diagnoses included bipolar and polysubstance abuse, heavy cocaine. He was given samples of Seroquel (antidepressant) and encouraged to attend therapy (Tr. 232-233).

A second psychiatric evaluation was conducted on November 17, 2008. At this evaluation, Plaintiff reported overall improvement but indicated social phobias. He was given

Cymbalta (another antidepressant) to take in addition to the Seroquel (Tr. 231).

On December 4, 2008, Plaintiff reported pain and swelling in his feet and was treated for osteoarthritis in his ankles (Tr. 262).

On December 15, 2008, Plaintiff reported that he was sleeping well and his appetite was normal. He had not started taking the Cymbalta. Plaintiff was encouraged to start taking the Cymbalta and Seroquel and attend therapy (Tr. 230).

In February of 2009, Plaintiff reported that he was feeling less depressed and had an upbeat mood. Plaintiff reportedly had organized thoughts, and he denied auditory and visual hallucinations. He also indicated that the swelling and pain he experienced the month prior had improved (Tr. 229).

Plaintiff expressed his pleasure with the efficacy of Cymbalta and Seroquel on March 2, 2009. He was scheduled for a three month follow-up visit and encouraged to continue his medication (Tr. 228).

On May 29, 2009, Plaintiff complained of bilateral ankle pain and was given steroid injections in both ankles. Dr. Bernadino Eventure, a family medicine physician, diagnosed Plaintiff with bilateral arthritis (Tr. 254).

On August 12, 2009, Plaintiff visited Dr. George Ascher for an MRI of his lumbar spine. The MRI revealed signs of early degenerative disc disease (Tr. 234).

On December 14, 2009, Plaintiff visited his treating physician, Dr. Charles Ellsworth, because of lower back and ankle pain (Tr. 248). Dr. Ellsworth noted no edema,[6] but possible

---

[6]Edema is the medical term for swelling. It is a general response of the body to injury or inflammation. Edema can be isolated to a small area or affect the entire body. *See* http://www.webmd.com/heart-disease/heart-failure/edema-overview (last visited July 29, 2013).

9

ankle swelling (Tr. 248). A mental status evaluation indicated that Plaintiff exhibited no signs of depression, anxiety, or agitation (Tr. 278).

Dr. Ellsworth saw Plaintiff on June 30 and October 1, 2010. Plaintiff still did not exhibit any signs of depression or anxiety (Tr. 272, 276). During the June visit, Plaintiff reported that he was playing softball and had started jogging (Tr. 275). Plaintiff also requested a referral to Dr. Bernadino for cortisone injections (Tr. 275). The following month, Dr. Bernadino gave Plaintiff the cortisone injections and noted very minimal swelling of the right ankle, good range of motion, and no swelling in the left lower extremity (Tr. 273-274).

On November 15, 2010, Dr. Ellsworth completed a Medical Source Statement (Mental). He found Plaintiff was markedly limited in his ability to relate and interact with supervisors and co-workers, and in his ability to maintain concentration and attention for at least two hours. Plaintiff was mildly limited in his ability to understand, remember and carry out an extensive variety of technical or complex job instructions. And, Plaintiff was extremely limited in his ability to deal with the public, and in his ability to withstand the stress and pressures associated with an eight-hour work day and with day-to-day work activity. He noted that Plaintiff's drug and alcohol addiction contributed to his limitations (Tr. 281).

### 3. Vocational Expert

The ALJ posed two questions to the vocational expert ("VE") related to Plaintiff's work capacity (Tr. 67, 68). The ALJ first asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work experience who could perform light work but was limited to simple, routine, and repetitive tasks with occasional supervision (Tr. 67). The VE testified that

jobs existed in the light, unskilled category such as dish washer, laundry worker, or inspector (Tr. 67).

In the second hypothetical, the ALJ asked the VE to assume the individual could not sustain a 40 hour a week work schedule, due to his limitations (Tr. 67). The VE testified that the individual would be precluded from work (Tr. 68-69). The VE also testified that if the individual needed to lie down or nap at unpredicted times on a regular basis – beyond the typically allowed breaks and lunch periods – the individual would be precluded from work (Tr. 68). Finally, the VE testified that if an individual's lack of concentration prevented him from working 20% of the time (i.e., one day per week), he would be precluded from work (Tr. 68-69).

### D. *Plaintiff's Claims of Error*

Plaintiff argues that the ALJ erred in: (1) evaluating his credibility; (2) posing a hypothetical question to the VE that did not accurately account for his limitations; and, (3) his analysis of the treating source rule.

#### 1. Credibility Determinations

Plaintiff first argues that the ALJ erred in his credibility determination and, in turn, presented an inaccurate hypothetical to the VE.

In reviewing Plaintiff's credibility, the ALJ was required to evaluate whether Plaintiff's symptoms and limitations were supported by the objective medical evidence and other evidence. *See* 20 C.F.R. § 404.1529(a). Plaintiff's self-reported limitations may be used to establish disability in certain situations. *See Young v. Sec'y of HHS*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Cagle v. Astrue*, 2012 WL 3201960, at *6 (E.D. Tenn. July 16, 2012):

> When a Plaintiff attempts to establish disability based on subjective complaints, [he] must provide objective medical evidence of an underlying medical condition

that either confirms the severity of the alleged symptoms or indicates the condition reasonably could be expected to cause symptoms as severe as alleged. 20 C.F.R. § 404.1529; *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). If the objective medical evidence alone does not confirm the allegations of disabling symptoms, the ALJ must evaluate all other evidence to determine to what extent, if any, the alleged symptoms limit the claimant's work capacity. *See* 20 C.F.R. § 404.1529(c)(3). "The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis." *Walters*, 127 F.3d at 531.

### *a.     Mental Limitations*

Plaintiff alleged that he has severe depression that causes him to "just want to cry"; he has to "lie down or nap at unpredicted times on a regular basis" because his medication makes him drowsy; and, he has problems with memory, completing tasks, following instructions, understanding, concentrating, and getting along with others (Dkt. No. 9 at pgs. 10, 12).

Plaintiff undoubtedly has depression. But, the severity is not supported by the objective medical evidence. Plaintiff's interest increased in 2008 (Tr. 229-231), his mood ranged from normal to "up beat" (Tr. 228-230, 251-252, 256),[7] and his depression subsided towards the end of 2009 (Tr. 242, 246, 248, 272, 276). Further, Plaintiff's allegation that "[w]hen [he] get[s] home[,] [he] stay[s] in the house and [does not] go anywhere" (Tr. 167) is contradicted by his own statements that he visited his friend once a week, played softball twice a week and basketball once a week, went outside daily, and shopped for food and health care at least once a month (Tr. 182, 185-186). Plaintiff's mother also reported that Plaintiff attends family functions (Tr. 178).

Further, there is no objective medical evidence supporting Plaintiff's allegation that he

---

[7]On October 20, 2008, Plaintiff's mood was "depressed" (Tr. 233).

had to take unscheduled naps. And, Plaintiff described a typical day as follows:

> Eat [b]reakfast – [e]xercise – watch T.V. – [d]o [h]ousework if there is [a]ny. Do things my mother might need [d]one[.] [W]atch more T.V. Eat [d]inner – once a week visit my [f]riend . . . for a couple hours - [r]ight know[sic] [p]lay [s]oftball Monday & Wensday[sic] [e]vening[.] Play [b]asketball Thursday [a]fternoons[.] Come home [and] go to bed[.]

(Tr. 182). Plaintiff did not mention lying down or taking naps during the day.

Finally, Dr. DeLoach agreed that Plaintiff had trouble with memory, completing tasks, following instructions, understanding, concentrating, and getting along with others. Specifically, Dr. DeLoach found that Plaintiff was moderately limited in his ability to: (1) maintain concentration; (2) understand and remember detailed instructions; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms; (4) accept instructions and respond appropriately to criticism from supervisors; and (5) get along with coworkers or peers without distracting them or exhibiting behavioral extremes. After reviewing Plaintiff's medical evidence and allegations – and considering Plaintiff's conditions – Dr. DeLoach opined that Plaintiff could perform simple tasks. The ALJ afforded "great weight" to Dr. DeLoach's opinion (Tr. 50), and his RFC determination is consistent with Dr. DeLoach's opinion (i.e., the ALJ found Plaintiff was limited to "simple, repetitive work involving routine tasks") (Tr. 44). Plaintiff does not contest the weight afforded Dr. DeLoach's opinion or argue that his mental condition caused greater limitations than Dr. DeLoach found.

The ALJ's credibility determination regarding Plaintiff's mental limitations should not be disturbed on appeal.[8]

---

[8] Dr. DeLoach found that Plaintiff's allegations were "at least peartially[sic] credible" (Tr. 220).

### b.     *Physical Limitations*

Plaintiff alleged that he could not stand for more than 45 minutes and walk for more than 25 minutes due to the swelling in his ankles (Dkt. No. 9 at p.11).  In addition, Plaintiff alleged that he could not sit for more than 40 minutes, or bend over due to his back pain (*Id.*).

The objective medical evidence does not confirm Plaintiff's alleged limitations, or indicate that his back pain or osteoarthritis reasonably could be expected to cause the alleged limitations.  For example, Plaintiff had good to full range of motion in his ankles (Tr. 260, 273); his gait was stable (Tr. 259-260); coordination and strength were intact (Tr. 260); he was ambulatory (Tr. 254); he only had "slight" or "very minimal" swelling (Tr. 254, 273); and, no tenderness or dermatitis[9] (Tr. 254, 273).  In addition, the laboratory results regarding Plaintiff's back pain did not demonstrate any functional limitations (Tr. 234-236).  No medical source suggested that Plaintiff's back pain or osteoarthritis caused disabling limitations.

This Magistrate Judge evaluated the other evidence to determine to what extent, if any, the alleged symptoms limited Plaintiff's work capacity.  Plaintiff's mother indicated that Plaintiff's ability to bend, walk, sit, and stand were not affected by his condition (Tr. 179). Plaintiff confirmed his mother's opinion (Tr. 188).  In addition, Plaintiff's mother reported that Plaintiff can walk a "[l]ong way" before he needed to stop and rest (Tr. 179), and Plaintiff indicated that he could walk "[a]s long as needed" before he needed to stop and rest (Tr. 188). Plaintiff also reported that he does housework and other things that his mother needs done (including cleaning the basement, lawn care, snow removal, and repairs); and, he plays softball

---

[9]Dermatitis is "inflammation of the skin."  *Dorland's Illustrated Medical Dictionary*, 500 (31st Ed. 2007).

14

twice a week and basketball once a week (Tr. 49, 182, 184). The ALJ was permitted to consider Plaintiff's daily activities in evaluating his credibility. *See* 20 C.F.R. § 404.1529(c)(3)(i).

Importantly, Plaintiff stated on his Disability Report that he was only limited in his ability to work due to bipolar disorder and mental problems – not because of his osteoarthritis or back pain (Tr. 167).

The ALJ's credibility determination regarding Plaintiff's physical limitations should not be disturbed on appeal.

### 2. Reliance on Vocational Expert's Hypothetical

Plaintiff next asserts that the ALJ posed a hypothetical question to the VE that did not accurately account for his limitations. Plaintiff bears the burden to establish a prima facie case of disability. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). The burden then shifts to the Commissioner to show at step five, that Plaintiff has the capacity to perform work in the national economy. *Id*. This burden must be met with a finding supported by substantial evidence. *Parley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987). Substantial evidence may be shown through reliance on a VE's testimony in response to a hypothetical question, as long as the question accurately describes Plaintiff's physical and mental impairments and takes Plaintiff's limitations into account. *Id*. at 779-80.

Plaintiff contends that the ALJ's hypothetical did not fully include his limitations. However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Sec'y of HHS,* 39 F.3d 115, 118 (6th Cir. 1994). For the reasons discussed in the credibility section, the ALJ correctly found that Plaintiff's allegations were not entirely credible. As such, the ALJ's hypothetical question accurately portrayed an individual

15

with Plaintiff's limitations and found that Plaintiff was not disabled (Tr. 67).

### 3. Treating Source Rule

Plaintiff's final argument is that the ALJ erred in affording "little" weight to Dr. Ellsworth's opinion. The Sixth Circuit has instructed ALJs on how to assess opinions from treating sources like Dr. Ellsworth:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).
>
> The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013), reh'g denied (May 2, 2013).

Here, the ALJ accorded "little weight" to Dr. Ellsworth's opinion:

> The medical source statement (mental) from Dr. Ellsworth . . . is given little weight. As discussed above, Dr. Ellsworth opines that [Plaintiff] has marked limitations in many areas as a result of his bipolar disorder, and yet Dr. Ellsworth's office records consistently document Dr. Ellsworth's observations that [Plaintiff] has no problems on his mental status examinations. Dr. Ellsworth's opinions relative to [Plaintiff's] functional limitations are not supported with objective medical findings and are inconsistent with the substantial evidence of record. For these reasons, the undersigned gives little weight to the opinions from this form.

(Tr. 50). Dr. Ellsworth checked the boxes corresponding to Plaintiff's limitations on the Mental Medical Source Statement, but when asked about the duration of Plaintiff's limitations, Dr. Ellsworth indicated "[Plaintiff] states about 10 yrs" (Tr. 281). Dr. Ellsworth's response suggests that his opinion was based on Plaintiff's subjective complaints, instead of well-supported by medically acceptable clinical and laboratory diagnostic techniques. Indeed, Dr. Ellsworth's opinion was not based on any medical data, and his treatment notes consistently found that Plaintiff's judgment, insight, and memory were intact; he was oriented to time, place and person; and, he did not have depression, anxiety, or agitation. These findings are somewhat inconsistent with an individual who is: (1) mildly limited in his ability to understand, remember and carry out an extensive variety of technical or complex job instructions; (2) markedly limited in his ability to relate and interact with supervisors and co-workers; (3) markedly limited in his ability to maintain concentration and attention for at least two hours; (4) extremely limited in his ability to deal with the public; and (5) extremely limited in his ability to withstand the stress and pressures associated with an eight-hour work day and with day-to-day work activity. *See* 20 C.F.R. § 404.1527(c)(4) ("[g]enerally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). As such, the ALJ was not required to give Dr. Ellsworth's opinion controlling weight.

But, this does not end the analysis:

> when "the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors – namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544. Additionally, "a decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must

17

> be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996)).

*Beardsley v. Comm'r of Soc. Sec.*, No. 12-cv-11167, 2013 WL 1118009, at *3 (E.D. Mich. March 18, 2013). Here, the ALJ discussed the impact of the above-listed factors on his assessment. Specifically, the medical evidence shows Plaintiff began treatment with Dr. Ellsworth on December 14, 2009, and Dr. Ellsworth only treated Plaintiff five times. The ALJ summarized four of Plaintiff's visits with Dr. Ellsworth (December 14, 2009, January 14, 2010, June 30, 2010, and October 1, 2010) (Tr. 48-49), and noted that Plaintiff also saw Dr. Ellsworth in May of 2010 (Tr. 47). The ALJ also noted that Dr. Ellsworth examined Plaintiff's ankles and right foot (Tr. 48-49) and referred Plaintiff to Dr. Bernadino for cortisone injections in his ankles (Tr. 48). Importantly, the ALJ noted that Dr. Ellsworth was a family medicine physician – not a specialist (Tr. 47). *See* 20 C.F.R. 404.1527(c)(5) ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist").

In sum, the ALJ did not err in his analysis of Dr. Ellsorth's opinion.

## IV.     CONCLUSION

Because substantial evidence supports the ALJ's decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *See McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. *See* E.D. Mich. LR 72.1(d)(3), (4).

s/Mark A. Randon<br>
Mark A. Randon<br>
United States Magistrate Judge

Dated: July 31, 2013

### Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, July 31, 2013, by electronic and/or ordinary mail.

*s/Eddrey Butts*
*Case Manager for Magistrate Judge Mark A. Randon*